## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ANGEL DAVID UTRILLA RIVERA,

      Petitioner,

v.

MARY DE ANDA-YBARRA, in her official
capacity as Field Office Director of
Enforcement and Removal Operations, El
Paso Field Office, Immigration and Customs
Enforcement; TODD M. LYONS, in his
official capacity as Acting Director and
Senior Official Performing the Duties of the
Director of U.S. Immigration and Customs
Enforcement; KRISTI NOEM, in her official
capacity as Secretary of the Department of
Homeland Security; PAMELA BONDI, in
her official capacity as Attorney General of
the United States; and the Warden of
Torrance County Detention Facility in his or
her official capacity,

      Respondents.

Case No. 1:26-cv-00055-MIS-JFR

## ORDER DENYING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND GRANTING PETITION FOR WRIT OF HABEAS CORPUS

**THIS MATTER** is before the Court on Petitioner Angel David Utrilla Rivera's Verified

Petition for Writ of Habeas Corpus ("Petition"), ECF No. 1, filed January 13, 2026. The Court

issued an Order Directing Service and an Order to Show Cause, ECF No. 4, on January 14, 2026.

The Government filed a Motion to Dismiss Petition for Writ of Habeas Corpus for Failure to State

a Claim ("Motion to Dismiss"), ECF No. 11, on January 28, 2026.[1] Petitioner filed a Reply on

---

[1] In the January 13, 2026, Show Cause Order Respondents were directed to answer the petition within three days of service. Instead, after seeking an extension of time, Respondents filed their Motion to Dismiss for Failure to State a Claim. Because the Motion also addresses the merits of the Petition, ECF No. 11 at 11-12, the Court construes Respondents' responsive pleading as Respondents' Answer for these proceedings. As such, no further answer is required from Respondents.

February 1, 2026 ("Reply"), ECF No. 12. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **DENY** the Motion to Dismiss and **GRANT** the Verified Petition for Writ of Habeas Corpus.

**I.    Background**

The material facts of this case are undisputed. See Pet. at 10; Resp. Mot. to Dismiss at 2-3. Petitioner is a citizen of Venezuela who arrived in the United States at age 16 after making an appointment with the CBP One application and presenting himself at a Port of Entry near Nogales, Arizona on August 31, 2024. Pet. ¶¶ 33-36; Resp. Mot. to Dismiss Exh. A. That same day, Petitioner was paroled into the country with the condition his parole status would terminate on August 30, 2026. Pet. ¶ 36. Simultaneously, DHS issued Petitioner a Notice to Appear charging him as subject to removal under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") as an immigrant who, at the time of application for admission, was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity, and nationality as required under the regulation issued by the Attorney General under section 211(a) of the Act. Id. ¶ 38. Petitioner has resided in Minnesota since his parole into the country, has no criminal record, and has a pending asylum application. Id. ¶ 47.

On April 18, 2025, DHS sent a mass form email to Petitioner – and other CBP One parolees – purporting to terminate Petitioner's parole status and change the expiration date of his I-94 to April 18, 2025. Id. ¶ 44. On January 6, 2026, ICE took Petitioner into custody in Minnesota without a warrant and did not provide Petitioner an opportunity to be heard on the issue of his detention. Id. ¶ 46. Petitioner has been detained at the Torrance County Detention Facility in New Mexico

since the filing of this Petition. Id. ¶ 48. Respondents state that he is being detained pursuant to 8 U.S.C. § 1225(b)(1)(iii)(IV). Resp't. Mot. to Dismiss at 1.

On January 13, 2026, Petitioner filed the instant Verified Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. The Petition asserts four claims arising from Petitioner's detention: (1) violation of substantive due process under the Fifth Amendment; (2) violation of procedural due process under the Fifth Amendment; (3) violation of the INA; and (4) arbitrary and capricious agency conduct in violation of the Administrative Procedures Act. Id. ¶¶ 109 – 183. The Petition also asserts three claims arising from Petitioner's parole termination: (1) violation of procedural due process under the Fifth Amendment; and (2) two violations of the Administrative Procedures Act. Id.

On January 28, 2026, Respondents filed the instant Motion to Dismiss for lack of jurisdiction and for failure to state a claim. ECF No. 11.

## II.    Legal Standard

### A.    Motion To Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." Id. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the

claim across the line from conceivable or speculative to plausible." Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021).

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," because "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555, (citation omitted). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Id. at 556. The court's role when reviewing "a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).

### B.  The Court's Jurisdiction

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Off. of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994). "[T]he party invoking federal jurisdiction," generally the plaintiff, "bears the burden of establishing its existence." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998). Rule 12(b)(1) allows defendants to raise the defense of the court's "lack of subject-matter jurisdiction" by motion. Fed. R. Civ. P. 12(b)(1).

"The habeas statute provides that a federal district court may entertain a habeas application by a person held 'in custody under or by color of the authority of the United States,' or 'in custody in violation of the Constitution or laws or treaties of the United States.'" Munaf v. Geren, 553 U.S. 674, 685 (2008) (quoting 28 U.S.C. §§ 2241(c)(1), (3)). "An individual is held 'in custody'

by the United States when the United States official charged with his detention has 'the power to produce' him." Id. at 686 (quoting Wales v. Whitney, 114 U.S. 564, 574 (1885)).

"District courts are limited to granting habeas relief 'within their respective jurisdictions.'" Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)). This language requires "nothing more than that the court issuing the writ have jurisdiction over the custodian." Id. (quoting Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484, 495 (1973)).

## III. Discussion

### 1. The Court has subject matter jurisdiction, and Petitioner states a valid claim

As an initial matter, Respondents contest the Court's jurisdiction over the Petition. Respondents argue that even if Petitioner has a valid parole claim, judicial review is barred in the instant case because the Court is prohibited from reviewing § 1225(b)(1) determinations. Mot. to Dismiss at 11.

Petitioner argues that such bar is irrelevant because Petitioner is not seeking to review the applicability of § 1225, nor is he challenging any "order of removal." Reply at 2. Instead, Petitioner is challenging the termination of parole as it relates to his custody, and thus, he argues, "the limitations on review of removal orders and relief have nothing to do with the propriety of parole termination under 8 U.S.C. § 1182(d)(5)." Id. at 3. Put another way, Petitioner is seeking compliance with mandatory procedures for terminating parole which, he argues, is a reviewable nondiscretionary step. Id. at 2.

Moreover, Petitioner argues that even if he is subject to § 1225, the statutory exception to custody under § 1225(b)(1) is parole under § 1182(d)(5), which had been granted in Petitioner's case. Id. Lastly, Petitioner argues that while the ultimate decision for granting or terminating parole is discretionary, statute "clearly establishes two mandatory antecedents for parole

termination[,]" one of which requires Respondents conduct individualized analysis before the revocation of parole. Id. at 4.

While it is true that this Court lacks jurisdiction to review the government's discretionary decisions to initiate removal proceedings, as Petitioner rightfully observes, that is not the central issue in this case. This Court, pursuant to 28 U.S.C. § 2241, has jurisdiction to hear Petitioner's habeas petition because statute "authoriz[es] any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws ... of the United States.'" Zadvydas v. Davis, 533 U.S. 678, 687 (2001) (quoting 28 U.S.C. § 2241(c)(3)). Further, while Respondents are correct that § 1252 strips the court of jurisdiction over a substantive discretionary decision, it does not strip jurisdiction over procedural challenges.[2]

Here, Utrilla Rivera argues that the termination of his parole was unlawful because Respondents violated both his statutory rights and his constitutional rights by terminating his parole and detaining him without a hearing. Effectively, Petitioner is arguing that he was entitled to some kind of Procedural due process prior to the termination of his parole and ultimate re-detention on January 6, 2026. That claim is well within the purview of this Court. As such, the Court finds that it has subject-matter jurisdiction in the instant case.

## 2.  Petitioner's Constitutional Due Process Rights

Because the Petition can be resolved on due process grounds, the Court need not address Petitioner's statutory claims.

---

[2] See Mantena v. Johnson, 809 F.3d 721, 728 (2d Cir. 2015) (finding that the court had jurisdiction to review petitioner's claim that respondent "erred procedurally" in revoking an employment visa petition on grounds that it "violated its own regulations by providing insufficient notice of the revocation").

On the merits, Petitioner argues, <u>inter alia</u>, that his detention violates his Fifth Amendment Due Process rights. Pet. ¶¶ 60-63. Specifically, Petitioner argues that he should not be subjected to the mandatory detention requirement of 8 U.S.C. § 1225(b)(2)(A) because the grant of parole was already an exception to mandatory detention. He further argues that if the government paroles a noncitizen into the United States under 8 U.S.C. § 1182(d)(5), then it has limited authority to terminate parole because the plain language of the statute "directs that parole may be granted 'only on a case-by-case basis'" and may be terminated "when the purposes of such parole... have been served." Reply at 6. Moreover, Petitioner argues that because an exception to the mandatory detention requirement (parole) was already granted, he has a vested liberty interest in remaining free from custody if he complied with the terms of his release. <u>Id.</u> at 3, 11.

Respondents disagree, arguing that Petitioner is appropriately subject to mandatory detention under the INA and has been afforded the required statutory rights and protections. Mot. to Dismiss at 12. They contend that upon the revocation of his parole, Petitioner's status reverted to that of an "arriving alien" under § 1225. <u>Id.</u> As such, Respondents argue, Petitioner's only due process rights are those afforded by statute and such rights have already been met, thus ordering Petitioner's immediate release would be "contrary to the law governing immigration habeas proceedings." <u>Id.</u>[3] In support of their position, Respondents primarily rely on the plain language of 8 U.S.C. § 1182(d)(5)(A) which reads as follows:

> The Secretary of Homeland Security may.... In his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the

---

[3] The Court notes that although not explicitly stated in Respondents' brief, Respondents imply that a bond hearing is not an available remedy in the instant case. <u>See</u> Mot. to Dismiss at 12.

custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

The Fifth Amendment entitles noncitizens to due process of law during removal proceedings. Trump v. J. G. G., 604 U.S. 670, 673 (2025). What due process Petitioner is owed depends on his or her classification under the provisions of the INA. Because of that, this District – and many others – have seen many recent habeas cases swing on whether the § 1225 provision or § 1226(b) governs petitioner's detention. However, the instant case presents something materially different. Petitioner is challenging the procedure by which his parole was terminated and thus arguing the antecedent required to justify his re-detention under § 1225 is non-existent, rendering his continued detention unlawful. The Court agrees.

Petitioner has been granted humanitarian parole subject to a form I-94, which provided him parole for two years. Pet. ¶¶ 36-37. He has been in the United States residing in Minnesota since, and, absent the lawful termination of his parole, possesses legitimate legal status until August 31, 2026. Id. Furthermore, he was determined not to be a danger to the community or a flight risk when Respondents first paroled him into the country. Reply at 11. He has no criminal record since his arrival, has a pending application for asylum, and has complied with the conditions of his initial parole. Pet. ¶¶ 45-47. Collectively, this supports a finding that Petitioner is owed more than the due process rights afforded to a typical "applicant for admission" who presents at the border; rather, Petitioner is an individual with a protected liberty interest in remaining out of Respondents' custody. Furthermore, Respondents conducted no individual evaluation of Petitioner's circumstance prior to terminating his parole. In fact, Respondents offered no argument that the Secretary made any kind of individual evaluation as to whether the purposes specific to Petitioner's

parole had been served, nor was the email terminating Petitioner's parole signed by any government official. Pet. ¶¶ 40-42. Respondents also did not provide Petitioner any opportunity to challenge or otherwise be heard as it related to his parole termination. As such, Petitioner had a protected liberty interest that Respondents deprived him of and are continuing to detain him despite failing to satisfy the antecedent necessary to justify his re-detention. Further, they are doing so without having provided Petitioner any opportunity to be heard.

Although the issues presented by Petitioner do not appear to have been addressed by courts in this District, many other districts have found for petitioners when presented a similar fact pattern. See, e.g., Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets the criteria."); Salazar v. Casey, No. 25-cv-2784-JLS, 2025 WL 3063629 at *4 (S.D. Cal. Nov. 3, 2025) ("Petitioner is not merely an 'applicant for admission' at the border with minimal due process rights; Petitioner has protected liberty interest in remaining out of custody…. [t]he Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner her due process rights."); Mata Velasquez v. Kurzdorfer, 794 F. Supp. 3d 128, 150 (W.D.N.Y. 2025) ("While the [new] administration may wish to change course, [Petitioner's] engendered reliance interest, and his compliance with everything that the Executive Branch asked of him, entitles him to more than summary arrest and detention."); see also Pet. ¶ 96 (collecting cases).

Because Petitioner has a protected liberty interest, the Due Process Clause requires some procedural protections before he can be deprived of that interest. Whether the protections provided in the instant case are constitutionally sufficient requires the Court to apply the Mathews v.

9

Eldridge factors weighing (1) the private interests that will be affected by the official action, (2) the risk of erroneous deprivation of such interests through the procedures used, and (3) the Government's interest. 424 U.S. 319, 334-35 (1976).

The Court finds that all three factors support a finding in favor of Petitioner in the instant case. The private interests affected by the official action is remarkably high as it is effectively the absolute deprivation of Petitioner's liberty. The risk of erroneous deprivation of such interests is also abundantly clear as Petitioner was provided no opportunity to challenge the termination of his parole and given no clarity as to what actions, if any, justified his parole revocation. Lastly, the Government's interest in not providing Petitioner an opportunity to challenge his parole revocation is not particularly clear, but in any event is weak. Petitioner's parole was granted on a case-by-case basis, and he was regularly in contact with federal respondents throughout his parole. Thus, it does not seem like much of an administrative burden to similarly evaluate Petitioner's parole revocation on an individualized basis. Further, by Respondents own evaluation, Petitioner did not present a danger to the community or a flight risk, rendering time not of the essence in allowing Petitioner's parole to continue to run as an individualized inquiry was made.

Therefore, given Petitioner does have a protected liberty interest provided by his initial grant of parole and the Mathews factors weigh in his favor, the Court finds that Respondents violated Petitioner's Fifth Amendment Right to Due Process. See Mata Valasquez, 794 F. Supp. 3d at 152-52; Pinch, 792 F. Supp. 3d at 1033-36; Salazar, 2025 WL 3063629.

IV.    **Conclusion**

Based on the foregoing, it is **HEREBY ORDERED** that:

1.  Respondents' Motion to Dismiss for Failure to State a Claim, ECF No. 11, is **DENIED**;

2.  Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED**;

3. Respondents are **ORDERED** to immediately release Petitioner and Respondents are **ENJOINED** from re-detaining Petitioner absent making an individualized finding of a material change in circumstances to justify the termination of Petitioner's parole status;

4. The Government shall file a status report within ten days of the date of this Order to certify compliance.

5. The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE